SOMMERS SCHWARTZ, P.C.
Kevin J. Stoops (State Bar #332200)
1801 Century Park E #860
Los Angeles, CA 90067
Telephone: (310) 579-0600
Kstoops@sommerspc.com

Alana A. Karbal (*pro hac vice forthcoming*)
One Towne Square
Southfield, MI 48076
Telephone: (248) 355-0300
Facsimile: (249) 746-4001
Akarbal@sommerspc.com

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **KAELA WASHINGTON**, individually, and on behalf of others similarly situated,<br><br>     Plaintiff,<br><br>v.<br><br>**RH**, a foreign corporation,<br><br>     Defendant. | Case No.: 3:24-cv-2774<br><br>**COLLECTIVE AND CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Name of Judicial Officer:<br>Courtroom Number:<br>Date & Time of Hearing: |

Plaintiff, Kaela Washington ("Plaintiff"), hereby brings this Collective and Class Action Complaint against Defendant, RH ("Defendant"), and states as follows:

1
Class and Collective Action Complaint

## **INTRODUCTION**

1.     This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually and on behalf of all similarly situated persons employed by Defendant, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.,* The Ohio Minimum Fair Wage Standards Act, O.R.C. §§ 4111, *et seq.* ("OMFWSA"), Section 34a of Article II of the Ohio Constitution, and common law.

2.     Defendant holds itself out to be "a leading retailer and luxury lifestyle brand operating primarily in the home furnishings market[,]" and "offer[s] merchandise assortments across a number of categories, including furniture, lighting, textiles, bathware, décor, outdoor and garden, and baby, child and teen furnishings."[1] Defendant offers its products in its "retail locations, websites and Source Books."[2]

3.     In providing the aforementioned services, Defendant employed hourly customer service representatives in brick-and-mortar call centers and in remote call center settings across the United States. Defendant used a number of titles, including, but not limited to, Customer Experience and Customer Service

---

[1] *See* https://ir.rh.com/financials-filings/annual-filings/content/0001558370-23-010413/0001558370-23-010413.pdf (last visited May 8, 2024).
[2] *Id.*

Class and Collective Action Complaint

Representative, to refer to its hourly call center employees (collectively referred to herein as "CSRs"). Defendant heavily relied on CSRs to, among other things, field calls from and make calls to Defendant's customers and delivery team.

4.      Defendant classified its CSRs as non-exempt and tasked them with the primary job duty of providing customer service to Defendant's clients.

5.      Defendant employed Plaintiff as a CSR.

6.      The United States Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's CSRs, are homogenous; in July 2008, the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.[3]

7.      One of those abuses, which is at issue in this case, is the employer's refusal to pay for work "from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2.

8.      More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA

---

[3] *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), https://www.dol.gov/whd/regs/compliance/whdfs64.pdf (last visited May 8, 2024).

requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id*.

9.    Defendant violated the FLSA and common law by systematically failing to compensate its CSRs for work tasks completed before and after their scheduled shifts and during their unpaid meal periods, when they were not logged into Defendant's timekeeping system. This resulted in CSRs not being paid for all overtime hours worked, overtime gap time when associated with unpaid overtime, and in non-overtime workweeks for regular hours.

10.    More specifically, Defendant failed to compensate CSRs for the substantial time they spent turning on and booting up their computer and computer systems prior to clocking into Defendant's timekeeping system, and shutting down their computer after they clocked out at the end of each shift.

11.    Plaintiff seeks a declaration that her rights, and the rights of the putative Collective and Class members, were violated, a judgment awarding her unpaid back wages, liquidated damages, attorneys' fees and costs to make her and the putative Collective and Class whole for damages they suffered, and any other remedies to which they may be entitled, and to help ensure Defendant will not subject future workers to the same illegal conduct in the future.

12.    At the earliest time possible, Plaintiff will request that the Court authorize notice of this action pursuant to 29 U.S.C. § 216(b) to all similarly

situated employees who worked for Defendant at any time in the past three years.

## JURISDICTION AND VENUE

13.    This Court has subject-matter jurisdiction over Plaintiff's FLSA claim, pursuant to 28 U.S.C. § 1331, because Plaintiff's claim raises a federal question under 29 U.S.C. § 201, *et seq.*

14.    Additionally, this Court has jurisdiction over Plaintiff's FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer… in any Federal or State court of competent jurisdiction."

15.    Defendant's annual sales exceed $500,000, and Defendant employs more than two individuals; thus, the FLSA applies in this case on an enterprise basis. Defendant's CSRs engage in interstate commerce and, therefore, they are also covered by the FLSA on an individual basis.

16.    This Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. §1367 because they originate from the same facts that form the basis of her federal claims.

17.    This Court has personal jurisdiction over Defendant because Defendant conducts business within the state of California, employs individuals within the state of California, and maintains its principal place of business in the state of California.

Class and Collective Action Complaint

18.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant employs CSRs in this District and conducts business in this District, and a substantial portion of the events that give rise to Plaintiff's clams occurred in this District.

## INTRADISTRICT ASSIGNMENT

19.    A substantial part of the events or omissions giving rise to the claims outlined herein occurred in Marin County; therefore, this action is properly assigned to the San Francisco Division. N.D. Cal. Local Rule 3-2(c)-(d).

## PARTIES

20.    Plaintiff Kaela Washington is a resident of Galloway, Ohio and from approximately September 2021 through October 2022, Plaintiff worked for Defendant as a non-exempt CSR in Defendant's Ohio brick-and-mortar call center and remotely. Defendant compensated Plaintiff through the payment of an hourly rate, most recently $24.00 per hour. Plaintiff Washington signed a consent to join this collective action, which is attached as **Exhibit A**.

21.    Additional Collective members were or are employed by Defendant as CSRs during the past three years and their consent forms will also be filed in this case.

22.    Defendant RH is a Delaware corporation (File No. 5025988) headquartered in Corte Madera, California. Defendant maintains a registered

agent for service of process listed as The Corporation Trust Company, Corporation Trust Center 1209 Orange Street, Wilmington, Delaware 19801.

## GENERAL ALLEGATIONS

23.    Prior to hiring prospective CSRs, Defendant provided them with a written offer setting forth the job requirements and hourly rate of pay.

24.    Defendant maintained documentation of the promised wage for each CSR including, but not limited to: offer letters, paystubs, and/or other payroll records.

25.    Plaintiff received an offer from Defendant to work as a CSR, and she accepted Defendant's offer with the understanding that her base hourly rate would be paid for all hours worked.

26.    Plaintiff performed under the agreement with Defendant by carrying out her job duties and responsibilities. More specifically, Plaintiff delivered electronic and over-the-phone customer service to Defendant's customers and delivery team which included, but was not limited to, answering questions and resolving problems for Defendant's customers, assisting Defendant's delivery team with questions they had related to deliveries, and handling issues associated with deliveries. To provide the aforementioned customer service, Plaintiff utilized Defendant's applications and systems to track all events and customer service information. Plaintiff additionally performed the required unpaid off-the-

clock work explained below.

27.     Defendant paid its CSRs at varying hourly rates.

28.     Defendant's CSRs, including Plaintiff, typically worked five days each week and up to, and on occasion more than, forty (40) hours per workweek.

29.     Defendant provided training to CSRs, on, *inter alia*, how to carry out their day-to-day job duties, how to track their time, how to load and log into their computer programs at the beginning of the day and how to log out at the end of the day; attendance, schedule and call quality expectations; and Defendant's policies. The training that Defendant provided to all of its CSRs was substantially, if not entirely, the same.

30.     At all relevant times, Defendant controlled Plaintiff's and all other CSRs' work schedules, duties, protocols, applications, assignments, and employment conditions.

31.     Defendant required Plaintiff and all other CSRs to use a computer and a variety of integral and indispensable computer programs, applications, and servers in order to perform their job duties.

32.     Defendant instructed Plaintiff and other similarly situated CSRs to be "call ready" the moment their scheduled shift started. This required Defendant's CSRs to log into and load all of their essential work-related computer programs and applications prior to the start of their shifts so they could

Class and Collective Action Complaint

be prepared to take calls the moment their shift began. During the boot-up and login process, Defendant's CSRs often experienced technical difficulties, increasing the amount of off-the-clock work they performed that shift.

33.    Defendant enforced its "call ready" policy through its uniform compensation, timekeeping, and attendance procedures. More particularly, Defendant routinely evaluated, and at times disciplined, CSRs based on schedule adherence metrics.

34.    Additionally, Defendant maintained schedule adherence and attendance metrics pursuant to which they monitored the CSRs' clock in times in relation to their start-of-shift time, as well as the time the CSRs went into a "ready" status. Indeed, Plaintiff's supervisors, Amber Rose and Jenna (last name unknown) spoke with Plaintiff on a number of occasions regarding Plaintiff's clock-in times and how they did not match the time Plaintiff placed herself in a "phone ready" state. During these discussions, Plaintiff explained system issues she experienced and her supervisors reinforced her need to be phone ready the moment her scheduled shift started.

35.    Defendant's policies, procedures, standards and processes necessarily required CSRs to be logged into all computer programs, applications and systems at the time their scheduled shift started.

36.    All of Defendant's CSRs used the same or similar computer

Class and Collective Action Complaint

networks, software programs, and applications in the course of performing their job responsibilities. These programs and applications were an integral and indispensable part of the CSRs' work and they could not perform their jobs without them.

37.     Defendant's CSRs also performed off-the-clock work when returning from lunch and preparing themselves to be call ready the moment their meal periods concluded.

38.     Similarly, Defendant's CSRs, including Plaintiff, performed work off-the-clock at the end of their scheduled shift, after clocking out of Defendant's timekeeping system, and when they shut down their computer.

39.     At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and its CSRs in order to pressure them into performing pre-, mid-, and post-shift work off-the-clock.

40.     The pre-, mid-, and post-shift off-the-clock time Plaintiff and all other CSRs spent booting-up/logging into and shutting down their computers and applications and programs directly benefitted Defendant and was integral and indispensable to the CSRs' job responsibilities.

41.     As a result of the pre-, mid-, and post-shift off-the-clock work described herein, Plaintiff and other CSRs were unlawfully deprived of approximately five (5) to twenty-two (22) minutes of compensation every shift.

42.    At all relevant times, Defendant was able to track the amount of time Plaintiff and other CSRs spent in connection with the pre-, mid-, and post-shift activities; however, Defendant failed to do so and failed to compensate Plaintiff and all other CSRs for the off-the-clock work they performed, thus breaching its agreements with its CSRs.

43.    Indeed, in light of the explicit and long-standing DOL guidance cited above, there is no conceivable way for Defendant to establish that it acted in good faith.

44.    Despite knowing Plaintiff and all other CSRs performed this pre-, mid-, and post-shift work, Defendant and its managers failed to make any effort to stop or disallow it and instead suffered and permitted it to happen.

45.    Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiff and all other CSRs booted-up and logged into their computers each shift, along with the time they logged into the timekeeping system.

46.    Upon information and belief, Defendant also possesses, controls, and/or has access to information and electronic data indicating when Plaintiff and all other CSRs experienced technical issues.

47.    Because Defendant required its CSRs, including Plaintiff, to perform pre-, mid-, and post-shift work off-the-clock, the hours tracked in Defendant's

timekeeping system are inaccurate representations of the total amount of time CSRs spent working for Defendant. Thus, the hours reflected on the CSRs' paystubs are also inaccurate representations of the hours they actually worked.

**Pre-Shift Off-the-Clock Work**

48.    The off-the-clock pre-shift process took approximately two (2) to ten (10) minutes per shift. Specifically, before each shift CSRs had to undertake the following essential work tasks:

        a.  Wake up their computer;

        b.  Log into Microsoft Windows using a username and password;

        c.  Secure access to Defendant's virtual private network ("VPN");

        d.  Open Internet Explorer;

        e.  Log into Salesforce (the application CSRs used for accessing customer accounts) using a username and password;

        f.  Open another Defendant internal program using a username and password;

        g.  Open Microsoft Outlook;

        h.  Log into Defendant's phone system using a username and password;

        i.  Log into Timecard using a username and password; and

        j.  Clock in and go into a "ready" status at the start of their scheduled shift.

49.    Defendant's CSRs had to complete this process while off-the-clock,

Class and Collective Action Complaint

before the start of their scheduled shifts and before fielding calls. Consequently, the CSRs had to begin working at least two (2) to ten (10) minutes before their scheduled shifts to complete their above-described start-up and log-in activities.

50.    Defendant's CSRs were not compensated for all of this time because Defendant prohibited its CSRs from clocking into the timekeeping software before the start of their scheduled shift.

51.    The pre-shift off-the-clock work CSRs performed directly benefitted Defendant, and was integral and indispensable to their job duties and responsibilities as CSRs.

52.    Defendant's management knew or should have known that Plaintiff and other CSRs performed this off-the-clock work, but permitted and even rewarded it through company metrics, compensation and timekeeping policies, and schedule adherence requirements.

**Meal-Period Off-the-Clock Work**

53.    Defendant promised its CSRs one unpaid 30-minute meal period each eight (8) hour shift.

54.    Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal break. 29 C.F.R. § 785.19(a) states:

> ***Bona fide meal periods***. Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for

snacks. These are rest periods. The employee must be _completely_ _relieved_ from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

55.    Instead of complying with the law, Defendant did not provide CSRs with legitimate bona fide meal periods because it required the CSRs to return to their computer stations prior to the end of their unpaid meal periods to log back into their computer, log back into various programs that timed out while they were away, and place themselves in a "ready" state so they could resume taking calls promptly at the end of their scheduled meal periods.

56.    If CSRs were not logged back into the phone system and ready to take calls promptly at the conclusion of their scheduled meal breaks, they were considered "out of adherence" and could be subjected to disciplinary action.

57.    CSRs spent approximately two (2) to ten (10) minutes performing this work during their unpaid meal periods. Thus, Defendant maintained a common plan and policy pursuant to which it failed to pay PCAs for no less than two (2) to ten (10) minutes per day of work performed during their meal period.

58.    The off-the-clock work Plaintiff and other CSRs performed during their meal periods was compensable, directly benefitted Defendant and the tasks

undertaken in connection with the off-the-clock work were integral and indispensable to their job duties and responsibilities as CSRs.

59.   Defendant's management was aware that Plaintiff and other CSRs performed this off-the-clock work, but permitted and even rewarded it through Defendant's schedule adherence metrics.

**Post-Shift Off-the-Clock Work**

60.   Pursuant to Defendant's policies, training, and direction, Plaintiff and all other CSRs were required to clock-out *before* shutting down their computer. This resulted Plaintiff and other CSRs performing an additional one (1) to two (2) minutes of off-the-clock work every shift.

61.   The post-shift off-the-clock work Plaintiff and other CSRs performed was compensable, directly benefitted Defendant and the tasks undertaken in connection with the off-the-clock work were integral and indispensable to the CSRs' job duties and responsibilities.

62.   Defendant's management knew or should have known that Plaintiff and other CSRs performed this off-the-clock work, but permitted and even rewarded it through company metrics, compensation and timekeeping policies, and schedule adherence requirements.

**The Off-the-Clock Work Results in Viable "Gap Time" Claims**

63.   Gap time" claims are those "in which an employee has not worked

Class and Collective Action Complaint

40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours." *Kinkead v. Humana at Home, Inc*., 450 F.Supp.3d 162, 182 (D. Conn. Mar. 31, 2020); *see also Conner v. Cleveland Cty.*, *N.C.*, 22 F.4th 412, 426 (4th Cir. 2022) ("we hold that overtime gap time claims are cognizable under the FLSA").

64.     Plaintiff, and all similarly situated CSRs, regularly worked non-overtime hours (i.e. "gap time") for which they were not paid.

65.      During the weeks that CSRs did not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices was a deprivation of straight-time wages, in breach of Defendant's agreements with its CSRs.

**Plaintiff's Exemplary Workweek**

66.     The FLSA and regular wage violations discussed herein occurred throughout Plaintiff's employment with Defendant; however, as an example of one pay period where Defendant failed to pay Plaintiff regular wages for work performed and overtime for hours worked in excess of forty (40) hours (as mandated by the FLSA), Plaintiff provides the following pay statement:

**March 13 – March 26, 2022 Pay Statement**

- Plaintiff worked less than 40 hours in one workweek at a rate of $24.00 per hour and upon information and belief was paid $24.00 for each regular hour worked.

- With pre-, mid-, and post-shift off-the-clock work, Plaintiff should have been paid an additional 5 to 22 minutes or more at her regular rate of $24.00 for each regular hour worked in the regular workweek.

- Plaintiff worked more than 40 hours in one workweek at a rate of $36.00 per hour and upon information and belief was paid $36.00 per hour in overtime.

- With pre-, mid-, and post-shift off-the-clock work, Plaintiff should have been paid an additional 5 to 22 minutes or more at her overtime rate of $36 for each hour worked in excess of 40 in the overtime workweek.

**Exhibit B**, Washington 03/13/22 – 03/26/22 Exemplary Pay Statement.

## **COLLECTIVE ACTION ALLEGATIONS**

67.    Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of herself and on behalf of:

> *All current and former CSRs who worked for Defendant at any time in the past three years.*

(hereinafter referred to as the "FLSA Collective"). Plaintiff reserves the right to amend this definition if necessary.

68.    Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

69.    Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

70.    Consistent with Defendant's policies and practices, Plaintiff and the

proposed FLSA Collective were not paid for all straight and/or premium overtime compensation in workweeks during which they worked beyond forty (40) hours or more when considering the uncompensated off-the-clock work discussed herein.

71.    All of the work Plaintiff and the proposed FLSA Collective performed was assigned by Defendant, and/or Defendant was aware of all of the work the Plaintiff and the proposed FLSA Collective performed.

72.    Defendant was aware, or should have been aware, that federal law required it to pay Plaintiff and the proposed FLSA Collective members for all hours worked and an overtime premium for all hours worked in excess of forty (40) per workweek.

73.    As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective. This policy and pattern or practice included, but is not limited to:

    a.  Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, for all regular hours they worked off-the-clock in non-overtime workweeks;

    b.  Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, for all overtime gap time and premium overtime wages for hours they worked off-the-clock in excess of forty (40) hours per workweek; and

    c.  Willfully failing to record all of the time that its employees,

including Plaintiff and the members of the FLSA Collective, worked for the benefit of Defendant.

74.    Defendant's unlawful conduct was (and is) widespread, repeated, and consistent.

75.    A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because: (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

76.    The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues are the same for every proposed FLSA Collective member, to wit: whether the FLSA Collective members are: (1) required to work uncompensated boot up and log out time; and (2) entitled to their regular hourly wage in non-overtime workweeks, overtime gap time in applicable weeks and overtime for hours worked over forty (40) in a week.

77.    Plaintiff estimates the FLSA Collective, including both current and former CSRs over the relevant period, includes hundreds, if not thousands, of members. The precise number should be readily available from a review of

Defendant's personnel and payroll records.

78.     The FLSA Collective should be notified of this action and allowed to opt-in pursuant to 29 U.S.C. § 216(b). Unless the Court promptly issues such a notice, the FLSA Collective members, who have been unlawfully deprived of pay in violation of the FLSA, will be unable to secure compensation to which they are entitled, and which has been unlawfully withheld from them by Defendant.

## **RULE 23 OHIO STATE LAW CLASS ACTION ALLEGATIONS**

79.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

> *All current and former CSRs who worked for Defendant at any location in Ohio during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Ohio Class"). Plaintiff reserves the right to amend this definition if necessary.

80.     The members of the Rule 23 Ohio Class are so numerous that joinder of all Rule 23 Ohio Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds, if not thousands, of Rule 23 Ohio Class members. Rule 23 Ohio Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

81.     There is a well-defined community of interests among Rule 23 Ohio Class members and common questions of law and fact predominate in this action

over any questions affecting individual members of the Rule 23 Ohio Class. These common legal and factual questions, include, but are not limited to, the following:

> a. Whether the pre-shift time Rule 23 Ohio Class members spent on startup and login activities each session before "clocking in" for each shift was compensable;

> b. Whether the time that Rule 23 Ohio Class members spent on work activities during their meal period, such as logging back into computer systems and clocking in, is compensable;

> c. Whether the post-shift time Rule 23 Ohio Class members spent shutting down their computer after "clocking out" is compensable;

> d. Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 Ohio Class member regular wages or minimum wage for each non-overtime hour worked;

> e. Whether Defendant engaged in a policy or practice of failing to pay each Rule 23 Ohio Class member overtime compensation for each overtime hour worked; and

> f. Whether Defendant should be required to pay compensatory damages, attorneys' fees, penalties, costs, and interest for violating the state laws and wage acts applicable to the members of the Rule 23 Ohio Class.

82.    Plaintiff's claims are typical of those of the Rule 23 Ohio Class in that she and all other Rule 23 Ohio Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Ohio Class members' claims

and her legal theories are based on the same legal theories as all other Rule 23 Ohio Class members.

83.    Plaintiff will fully and adequately protect the interests of the Rule 23 Ohio Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Ohio Class.

84.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Ohio Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

85.    This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

86.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified

criteria to pursue his claim as a class action").

87.     Because Defendant has acted and refused to act on grounds that apply generally to the Rule 23 Ohio Class and declaratory relief is appropriate in this case with respect to the Rule 23 Ohio Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## RULE 23 NATIONWIDE CLASS ACTION ALLEGATIONS

88.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of herself and on behalf of:

> *All current and former CSRs who worked for Defendant at any location in Ohio during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Nationwide Class"). Plaintiff reserves the right to amend this definition if necessary.

89.     The members of the Rule 23 Nationwide Class are so numerous that joinder of all Rule 23 Nationwide Class members in this case would be impractical. Plaintiff reasonably estimates there are hundreds, if not thousands, of Rule 23 Nationwide Class members. Rule 23 Nationwide Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

90.     There is a well-defined community of interests among Rule 23 Nationwide Class members and common questions of law and fact predominate

in this action over any questions affecting individual members of the Rule 23 Nationwide Class. These common legal and factual questions, include, but are not limited to, the following:

    a.   Whether the pre- and mid-shift time Rule 23 Nationwide Class members spent on startup and login activities each shift is compensable time under applicable law;

    b.   Whether the post-shift time Rule 23 Nationwide Class members spent shutting down their computers is compensable time under applicable law;

    c.   Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract; and

    d.   Whether Defendant's non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant.

91.    Plaintiff's claims are typical of those of the Rule 23 Nationwide Class in that she and all other Rule 23 Nationwide Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Nationwide Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Nationwide Class members.

92.    Plaintiff will fully and adequately protect the interests of the Rule 23 Nationwide Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of nationwide wage-and-hour class actions.

Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Nationwide Class.

93.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Nationwide Class members to prosecute individual actions of their own given the relatively small amount of damages at stake for each individual along with the fear of reprisal by their employer.

94.    This case will be manageable as a Rule 23 Class action. Plaintiff and her counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

95.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate. *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

96.    Because Defendant has acted and refused to act on grounds that apply generally to the Rule 23 Nationwide Class and declaratory relief is appropriate in this case with respect to the Rule 23 Nationwide Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

## COUNT I
## FLSA COLLECTIVE ACTION
## VIOLATION OF THE FAIR LABOR STANDARDS ACT,
## 29 U.S.C. § 201, et seq. -- FAILURE TO PAY OVERTIME

97.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

98.    At all times relevant to this action, Defendant was subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

99.    At all times relevant to this action, Defendant was engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

100.    At all times relevant to this action, Plaintiff and the FLSA Collective were "employees" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

101.    At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and the FLSA Collective to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

102.    Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, were all non-exempt employees.

103.    Plaintiff either: (1) engaged in commerce; (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

104.    The FLSA requires an employer to pay employees for all hours

Class and Collective Action Complaint

worked and the federally mandated overtime premium rate of 1.5 times their regular rate of pay for every hour worked in excess of forty (40) hours per workweek. 29 U.S.C. § 207.

105.    The FLSA requires all employers to keep accurate payroll records and time records for at least three (3) years (including all basic timecards and daily starting/stopping times of individual employees). *See* 29 U.S.C. § 211(c); 29 C.F.R. 516.1, *et seq*.

106.    At all times relevant to this action, Defendant engaged in an unlawful policy and practice of requiring Plaintiff and all the proposed FLSA Collective members to perform pre-, mid-, and post-shift work off the clock, every shift, and failed to pay these employees their regular hourly rate for all hours worked in non-overtime workweeks, overtime gap time in weeks where it occurred, and the federally mandated overtime compensation for all work performed over forty (40) hours per week.

107.    The off-the-clock work performed every shift by Plaintiff and the proposed FLSA Collective was an essential part of their jobs and these activities and the time associated with these activities was significant.

108.    In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, or close enough to forty (40) hours to have worked over forty (40) hours when considering the uncompensated off-the-clock

work time discussed herein, all of this overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage. 29 U.S.C. § 207. Further, all "gap time" should have been paid at Plaintiff and the FLSA Collective's regular hourly rate.

109.　As a result of Defendant's unlawful policies and practices, Plaintiff and the FLSA Collective members were deprived of both straight-time and overtime wages in violation of the FLSA.

110.　Defendant's violations of the FLSA were knowing and willful. Defendant could have easily accounted for and properly compensated Plaintiff and the proposed FLSA Collective members for all work activities, but did not.

111.　As a result of the foregoing, Plaintiff was injured and seeks appropriate relief against Defendant including unpaid wages (including unpaid overtime), an additional equal amount in liquidated damages (double damages), reasonable attorneys' fees and costs, interest, and all other relief just and appropriate under the circumstances.

**COUNT II**
**RULE 23 OHIO CLASS ACTION**
**VIOLATIONS OF THE OHIO MINIMUM FAIR WAGE STANDARDS ACT**
**("OMFWSA"), O.R.C. §§ 4111, *et seq*. AND OHIO CONSTITUTION ART. II, § 34a**

112.　Plaintiff re-alleges and incorporates all previous paragraphs herein.

113.　At all times relevant to this action, Defendant was subject to the

mandates of the OMFWSA, O.R.C. §§ 4111, *et seq.*, and Section 34a of Article II of the Ohio Constitution.

114.    At all times relevant to this action, Plaintiff and the Rule 23 Ohio Class worked for and were "employees" of Defendant in Ohio and were therefore covered by Section 34a of Article II of the Ohio Constitution and the OMFWSA.

115.    At all times relevant to the action, Defendant was an employer covered by Section 34a of Article II of the Ohio Constitution and the overtime and wage mandates of the OMFWSA, O.R.C. § 4111, *et seq.*

116.    The OMFWSA provides that employees are entitled to a minimum wage, O.R.C. § 4111.02, as well as "overtime at a wage rate of one and one-half times the employee's wage rate for hours worked in excess of forty hours in one workweek, O.R.C. § 4111.03. *See also* Ohio Const. art. II § 34a.

117.    At all times relevant to this action, Defendant engaged in an unlawful policy and practice of requiring Plaintiff and the Rule 23 Ohio Class members to perform pre-, mid- and post-shift work off-the-clock, every shift, and failed to pay these employees the minimum wage and overtime compensation to which they were entitled under Section 34a of Article II of the Ohio Constitution, Ohio Const. art. II § 34a, and the OMFWSA, O.R.C. §§ 4111.02 and 4111.03, for the work they performed.

118.    By failing to pay Plaintiff and members of the Rule 23 Ohio Class

the minimum wage and overtime compensation to which they were entitled for performing the off-the-clock work described herein, Defendant violated Section 34a of Article II of the Ohio Constitution, Ohio Const. art. II § 34a, and the OMFWSA, O.R.C. §§ 4111.02 and 4111.03.

119.    Section 34a of Article of the Ohio Constitution and § 4111.14(A)(3) of the OMFWSA allow an employee who has not been paid minimum wage for all hours worked to bring a civil action to recover "[double] back wages, damages, and the employee's costs and reasonable attorney's fees." O.R.C. § 4111.14(A)(3); *see also* Ohio Const. art. II § 34a.

120.    Pursuant to O.R.C. § 4111.10(A), an employer who fails to pay its employees for all overtime wages outlined in O.R.C. § 4111.03 "is liable to the employee affected for the full amount of the overtime wage rate, less any amount actually paid to the employee by the employer, and for costs and reasonable attorney's fees." O.R.C. § 4111.10(A)

121.    Additionally, § 4111.08 of the OMFWSA requires employers to maintain and preserve payroll records, including "the amount paid each pay period to each employee, the hours worked each day and each work week by the employee." O.R.C. § 4111.08.

122.    Defendant violated the OMFWSA, O.R.C. § 4111.08, by failing to properly maintain accurate records of all hours Plaintiff and the members of the

Class and Collective Action Complaint

Rule 23 Ohio Class worked each workday and within each workweek.

123.    Defendant's uniform policy and practice, as described above, was willful, intentional, unreasonable, arbitrary, and in bad faith.

124.    As a result, the Rule 23 Ohio Class has and will continue to suffer loss of income and other damages.  Accordingly, Plaintiff and the Rule 23 Ohio Class is entitled to recover double back wages, damages, attorneys' fees plus costs, interest, and other appropriate relief under Section 34a of Article of the Ohio Constitution and the OMFWSA at an amount to be proven at trial.

### COUNT III
### RULE 23 NATIONWIDE CLASS ACTION
### BREACH OF CONTRACT

125.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

126.    At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Nationwide Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed on behalf of Defendant.

127.    Evidence of these contracts include Defendant's offer letters, pay statements, and other documentary evidence in Defendant's possession. Additionally, Defendant made verbal offers for payment at a specified, above minimum wage for CSR work, which Plaintiff accepted and performed, but

Defendant failed to perform by paying Plaintiff and the Rule 23 Class the promised wages.

128.  For example, Defendant offered to compensate Plaintiff at a minimum of $24.00 per hour if she agreed to perform services for Defendant as a CSR. Plaintiff accepted Defendant's offer and performed her duties as a CSR in reliance on the offer.

129.  Defendant breached its contractual promises by failing to pay CSRs at their fixed, pre-agreed upon hourly rate for *all* of the hours worked.

130.  Upon information and belief, each Rule 23 Nationwide Class member, including Plaintiff, was contractually entitled to a minimum hourly rate of approximately $24.00 per hour within the applicable period.

131.  Plaintiff and every other Rule 23 Nationwide Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters, and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre-, mid-, and post-shift work described herein.

132.  Defendant can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Nationwide Class members based on the allegations made in this Complaint (specifically the amount of off-the-clock work claimed

Class and Collective Action Complaint

each shift) in conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Nationwide Class member.

133.    Plaintiff and the Rule 23 Nationwide Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them *more* than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (*i.e.*, pure "gap time" claims for non-overtime hours/workweeks).

134.    Defendant also breached its duty of good faith and fair dealing by failing to keep track of the time Plaintiff and other Rule 23 Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

135.    As a direct and proximate result of Defendant's contractual breaches, Plaintiff and the Rule 23 Nationwide Class members were damaged in an amount to be determined at trial.

## COUNT IV
## RULE 23 NATIONWIDE CLASS ACTION
## UNJUST ENRICHMENT

136.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

137.    This Count is pled in the alternative to Count III, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

138.    At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Nationwide Class member a pre-established regular hourly

rate in consideration of the work duties Plaintiff and the Rule 23 Nationwide Class members performed for Defendant's benefit.

139.    Plaintiff and every other Rule 23 Nationwide Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

140.    By not paying Plaintiff and every other Rule 23 Nationwide Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

141.    Plaintiff and the Rule 23 Nationwide Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

142.    Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Nationwide Class member and enjoyed the benefits derived therefrom.

143.    Upon information and belief, Defendant used the monies owed to Plaintiff and every other Rule 23 Nationwide Class member to finance its various business ventures or pay its equity owners.

144.    Defendant was unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Nationwide Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Nationwide Class for the same.

145.    Plaintiff and the Rule 23 Nationwide Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Nationwide Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

146.    As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Nationwide Class member suffered damages, including but not limited to, loss of wages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests the following relief:

a.    An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.    An Order certifying this action as a class action (for the Rule 23 Ohio Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's Ohio state law claims (Count II);

c.    An Order certifying this action as a class action (for the Rule 23 Nationwide Class) pursuant to Rule 23(b)(3) with respect to Plaintiff's breach of contract and unjust enrichment claims (Counts III and IV);

a.    An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all proposed FLSA Collective members, Rule 23 Ohio Class members, and Rule 23 Nationwide Class members, and authorizing Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

Class and Collective Action Complaint

d. An Order designating Plaintiff as representative of the FLSA Collective, the Rule 23 Ohio Class, and the Rule 23 Nationwide Class, and undersigned counsel as class counsel for the same;

e. An Order declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

f. An Order declaring Defendant's violations of the FLSA were willful;

g. An Order declaring Defendant violated Ohio state law for failing to pay Plaintiff and the Rule 23 Ohio Class the minimum wage and overtime compensation to which they were entitled;

h. An Order declaring Defendant breached its contracts with Plaintiff and the members of the Rule 23 Nationwide Class (or, in the alternative, that Defendant was unjustly enriched) by failing to pay them for mandatory pre-, mid-, and post-shift work activities described herein at a pre-established (contractual) regularly hourly rate;

i. An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff, the FLSA Collective, the Rule 23 Ohio Class, and the Rule 23 Nationwide Class the full amount of damages and penalty damages available by law;

j. An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in prosecuting this action as required by statute;

k. An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

l. An Order awarding such other and further relief as this Court deems appropriate.

**JURY DEMAND**

Class and Collective Action Complaint

Plaintiff, Kaela Washington, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: May 9, 2024                    Respectfully Submitted,

*/s/* Kevin J. Stoops
Kevin J. Stoops (CA Bar No. 332200)
402 W Broadway Suite 1760
San Diego, CA 92101
Telephone: 248-355-0300
kstoops@sommerspc.com

Alana A. Karbal (*pro hac vice* forthcoming)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
akarbal@sommerspc.com

*Attorneys for Plaintiff and the*
*Putative Collective/Class Members*